133 N.J. Super. 338 (1975)
336 A.2d 496
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN TEARE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1974.
Decided February 6, 1975.
*339 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued for appellant (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. Robert L. Martin, Assistant Prosecutor, of counsel and on the brief).
*340 Mr. George J. Minish argued for respondent (Messrs. Minish and Dooley, attorneys).
Mr. Richard W. Berg, Deputy Attorney General, argued for Mr. William F. Hyland, Attorney General of New Jersey, amicus curiae.
PER CURIAM.
In this case, wherein defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor (N.J.S.A. 39:4-50(a)), the State, by leave granted, appeals from an order suppressing the results of a breathalyzer test which had been administered to defendant.[1] The trial court granted the motion to suppress, basically for the reason that, pursuant to practice, the ampoule used in the test had been destroyed, that it was therefore not available to defendant for examination to determine the validity of the test results, and thus defendant was denied due process of law.
The matter had been tried on behalf of the State by the office of the Essex County Prosecutor. During the pendency of this appeal William F. Hyland, Attorney General of New Jersey, moved to file a brief and to be heard as amicus curiae. The motion was granted and we have considered the arguments of the defendant, the prosecutor and the amicus.
At the hearing below defendant produced an expert who testified that, if the ampoule had been preserved, defendant would have been afforded the opportunity to determine by subsequent examination whether the reading of the breathalyzer at the time of the test was accurate. Based on this evidence the trial judge held that, considering the many factors as to the qualitative and quantitative contents of the ampoule, which were critical to the accuracy of the test, the destruction of the ampoule prevented defendant from authenticating the fact that the particular ampoule used in the test was *341 properly composed and thus he was denied the right to challenge the result of the test.[2]
In this case the State offered no scientific testimony to contradict the theories espoused by defendant's expert. Contrariwise, in State v. Bryan, 133 N.J. Super. 369 (Law Div. 1974), involving the same issues, the State did produce scientific testimony in refutation of defendant's expert, who was the same witness who testified for defendant in this case. In Bryan the court, considering the expert testimony of both defendant and the State, held that the theories proposed by defendant were speculative. It was further held that the essential fairness and adequacy of the test had been established and the present method of spot-checking test ampoules (see State v. Dickens, 130 N.J. Super. 73 (App. Div. 1974); State v. DeVito, 125 N.J. Super. 478 (App. Div. 1973)), provided ample protection of defendant's rights. Consequently, the Bryan court held that there was no denial of due process in the destruction of the test ampoule.
Unquestionably, the issues involved here, as well as in Bryan, are of great significance in the administration of criminal justice in this area, affecting as they do the accuracy of breathalyzer tests which are so extensively used. Likewise we must consider the practice of destruction of the test ampoules involved.[3] No appellate court of this State has yet passed on the issues.
*342 To the end that a thorough development of the scientific issues involved should be undertaken, and findings and conclusions made thereon, the order suppressing the breathalyzer test in this case is reversed and the matter is remanded to the trial court for supplementation of the record to the extent reasonably required.[4] Both the State and defendant may produce such additional scientific proofs on the issues as they may deem appropriate. The trial court shall then make findings of fact and conclusions of law as to whether preservation of the test ampoules involved is feasible or practical; if so, under what conditions, and whether testing thereof will provide scientifically useful data to determine the reliability of the test administered and of the resultant reading.
The findings and conclusions of the trial court shall be filed with this court by March 15, 1975. The State and amicus curiae shall file and serve their briefs with relation to the whole record by April 5, 1975, and defendant shall serve and file his answering brief with respect thereto by April 25, 1975. If any party desires oral argument, request for same shall be set forth in their brief. If no such request is made, oral argument shall be deemed to have been waived.
NOTES
[1] However, defendant's motion to dismiss the complaint was denied.
[2] See People v. Hitch, 12 Cal.3d 641, 117 Cal. Rptr. 9, 527 P.2d 361 (Sup. Ct. 1974), for consideration of some of the factors involved in determining such an issue. There it was held that where the ampoules are unavailable because of the intentional but non-malicious destruction thereof by law enforcement officials, the court would impose sanctions on the prosecution for nonpreservation of the ampoules, unless the prosecution could show that the loss or destruction occurred in spite of good faith adherence to systematic procedures to preserve the ampoules. However the holding was prospective only. At this time we express no opinion on either issue.
[3] N.J.A.C. 13:51-3.5 directs that the test ampoule be destroyed.
[4] Whether the matter shall be supplemented by further oral testimony, or by use of transcripts of the testimony in Bryan, or otherwise, shall be left to the parties, subject to supervisory discretion of the trial judge.