230 N.J. Super. 238 (1989)
553 A.2d 356
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DOUGLAS ERNST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 10, 1989.
Decided February 3, 1989.
*239 Before Judges MICHELS, LONG and KEEFE.
Garber & Guralnick, attorneys for appellant (Mark S. Guralnick and Joel Wayne Garber, of counsel and on the brief).
Samuel Asbell, Camden County Prosecutor, attorney for respondent (Deborah Fox, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Douglas Ernst was found guilty in the Municipal Court of the Township of Pennsauken of operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. The municipal court judge suspended defendant's driving privileges for six months, fined him $250, imposed a $100 surcharge and ordered that he be detained in an Intoxicated Driver Resource Center for a period of not less than 12 nor more than 48 hours. Defendant appealed to the Law Division where, following a trial de novo on the record below, defendant was again found guilty of violating N.J.S.A. 39:4-50 and the same sentence was imposed. This appeal followed.
Defendant seeks a reversal of his conviction and a jury trial on the following grounds set forth in his brief:

*240 I. THE LOWER COURT ERRED BY ADMITTING BREATHALYZER TEST RESULTS INTO EVIDENCE EVEN THOUGH THE BREATHALYZER OPERATOR HAD BEEN PREVIOUSLY SUSPENDED AND HAD FAILED TO TAKE A TIMELY OR LONG ENOUGH RECERTIFICATION COURSE.
II. THE STATE FAILED TO PRODUCE PROOF OF RANDOM SAMPLING OF BREATHALYZER AMPOULES TO DEMONSTRATE THAT THEY WERE PROPERLY CONSTITUTED; ACCORDINGLY THE MUNICIPAL COURT ERRED BY ADMITTING BREATHALYZER RESULTS.
III. THE RIGHT TO A JURY TRIAL MUST BE REVISITED: THE SEVERITY OF PUNISHMENT TEST IS NOT THE ONLY MEASURE OF A DEFENDANT'S ENTITLEMENT TO THE RIGHT, FOR DRUNK DRIVING PROSECUTIONS NOW SUBJECT DEFENDANTS TO HIGHLY SCIENTIFIC PRESENTATIONS OF EVIDENCE DRAWING ON MULTIPLE, COMPOUNDED DETERMINATIONS OF WITNESS CREDIBILITY, AND ARE TREATED AS OFFENSES AFFECTING THE PUBLIC AT LARGE, INVOLVE THE ASSIGNMENT OF GREAT MORAL DELINQUENCY, ARE CONSIDERED AND TREATED IN ALL OTHER RESPECTS AS FULLY CRIMINAL MATTERS MANDATING PLENARY DISPOSITION, AND HAVE RISEN TO A LEVEL OF SUCH POTENTIALLY GREAT AND DEVASTATING SOCIAL PROPORTIONS AS TO COMPLETELY OUT-GROW THE MUNICIPAL COURT SYSTEM, ULTIMATELY ROBBING DEFENDANTS OF THE CRUCIAL PROTECTIONS OF THE UNITED STATES CONSTITUTION.
A. THIS DEFENDANT WAS ENTITLED TO A TRIAL BY JURY AS A MATTER OF FEDERAL CONSTITUTIONAL LAW.
B. THE COMBINATION OF PENALTIES, INCLUDING LONG-TERM LICENSE SUSPENSION, WARRANT A JURY TRIAL FOR THIS DEFENDANT.
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). Further comment, however, may be helpful with respect to some of the issues raised by defendant.

I.
First, contrary to defendant's claim, Officer William Smith of the Pennsauken Police Department, who administered the breathalyzer tests to defendant, had been properly recertified to operate the breathalyzer in accordance with the provisions of the New Jersey Administrative Code and, therefore, the test results were properly admissible in evidence.
*241 Officer Smith was initially certified to operate a breathalyzer upon completing a five-day course, as required by N.J.A.C. 13:51-1.6(a), from October 25 to October 29, 1976. Pursuant to N.J.A.C. 13:51-1.7(a), that certification was valid for the remainder of 1976 and for the next two calendar years, through December 31, 1978. Because Officer Smith failed to complete a recertification course before his certification lapsed, his certification was automatically suspended beginning January 1, 1979. N.J.A.C. 13:51-1.8(a) states:
The certification of an operator will be automatically suspended on the date set for expiration of the operator's present valid certification as set forth at N.J.A.C. 13:51-1.7 if said operator has not satisfied the requirement for recertification as set forth at N.J.A.C. 13:51-1.6(d) before the expiration of said valid certification.
Officer Smith was recertified as a breathalyzer operator after completing a recertification course from October 18 to October 20, 1982, pursuant to the provisions of N.J.A.C. 13:51-1.6(f) and 13:51-1.8(c). N.J.A.C. 13:51-1.6(f), in relevant part, states:
Reinstatement and special recertification of an operator whose certification is suspended pursuant to N.J.A.C. 13:51-1.8(a) and to whom the requirements as set forth at N.J.A.C. 13:51-1.8(c) apply requires satisfactory completion of training consisting of a minimum of three days of training prescribed and conducted by the Division of State Police.
N.J.A.C. 13:51-1.8(c) states:
An operator whose certification is suspended for failing to be recertified as set forth at N.J.A.C. 13:51-1.6(d) or N.J.A.C. 13:51-1.6(e) and who has been automatically suspended for one year or more from the date of the automatic suspension must attend and satisfy the requirements of a reinstatement and special recertification course as set forth at N.J.A.C. 13:51-1.6(f) conducted by the Division of State Police.
With the completion of the three-day recertification course, Officer Smith was again qualified to operate a breathalyzer after having been suspended from January 1979 to October 1982. The recertification was valid through the end of 1982 and for two calendar years thereafter, according to N.J.A.C. 13:51-1.7(c). Officer Smith again failed to be recertified before his license lapsed, and his certification was automatically suspended beginning January 1, 1985. N.J.A.C. 13:51-1.8(a).
*242 Officer Smith attended a one-day recertification course on March 22, 1985. The State argues that because Officer Smith's certification had been suspended for less than one year, the one-day recertification course was sufficient to validate Officer Smith as a breathalyzer operator. The State relies upon the language of N.J.A.C. 13:51-1.6(d), N.J.A.C. 13:51-1.6(e) and N.J.A.C. 13:51-1.8(b). N.J.A.C. 13:51-1.8(b) states:
An operator whose certification is suspended for failing to be recertified as set forth at N.J.A.C. 13:51-1.6(d) and who has been automatically suspended for less than one year from the date of the automatic suspension must attend and satisfy the requirements of the reinstatement and recertification course as set forth at N.J.A.C. 13:51-1.6(e) conducted by the Division of State Police. Reinstatement and recertification under this subsection must be completed before one year from the date of automatic suspension otherwise the operator must satisfy the requirements as set forth at N.J.A.C. 13:51-1.8(c).
N.J.A.C. 13:51-1.6(e) states:
Reinstatement and recertification of an operator whose certification is suspended pursuant to N.J.A.C. 13:51-1.8(a) and to whom the requirements as set forth at N.J.A.C. 13:51-1.8(b) apply requires satisfactory completion of training as set forth at N.J.A.C. 13:51-1.6(d).
N.J.A.C. 13:51-1.6(d), in relevant part, states:
Recertification of an operator, whose certification is not subject to suspension for any reason or revoked, requires satisfactory completion of training consisting of a minimum one day of training as prescribed and conducted by the Division of State Police. [Emphasis supplied].
Defendant, on the other hand, points to the emphasized language in N.J.A.C. 13:51-1.6(d) in arguing that the regulatory scheme is ambiguous and should, therefore, be construed in his favor. He argues that because Officer Smith's certification had been automatically suspended for failure to recertify, Officer Smith's certification was "subject to suspension" and, therefore, the one-day recertification program prescribed in N.J.A.C. 13:51-1.6(d) cannot apply. We disagree. A fair reading of the regulatory scheme contained in the Administrative Code reveals that the State's argument is the more reasonable one. The imprecise choice of words in N.J.A.C. 13:51-1.6(d) that seems to limit the one-day course to unsuspended operators does not render the provision fatally ambiguous. According to N.J.A.C. 13:51-1.6(e) and N.J.A.C. 13:51-1.8(b), an operator whose certification *243 has been suspended for less than one year may be recertified in a one-day course pursuant to N.J.A.C. 13:51-1.6(d). Despite the limiting language of N.J.A.C. 13:51-1.6(d), it is clear that the drafters of the regulations intended to treat operators whose certifications had been suspended for less than one year similarly to operators "not subject to suspension for any reason."
Consequently, Officer Smith was validly recertified to administer the breathalyzer tests and, therefore, the results of the tests administered to defendant were properly admissible into evidence.

II.
Further, the ampoules used in the breathalyzer tests had been validated by random sampling of ampoules from the same batch as those used in the breathalyzer tests. It is well-settled that the State need not provide an analysis of the contents of the actual ampoules used in the tests, State v. Teare, 135 N.J. Super. 19, 22 (App.Div. 1975), and that the spot checking of a random ampoule is sufficient prima facie proof that the chemicals in the test ampoule were of the proper kind and mixed to proper proportion. See State v. Dickens, 130 N.J. Super. 73, 79 (App.Div. 1974); State v. DeVito, 125 N.J. Super. 478, 479-480 (App.Div. 1973); State v. Bryan, 133 N.J. Super. 369, 373 (Law Div. 1974). But cf. State v. Dohme, 223 N.J. Super. 485, 488 (App.Div. 1988).
Here, the breathalyzer was stipulated to be in proper working order, and Officer Smith was qualified to operate the breathalyzer. The State introduced the signed statement of a State Trooper that he had tested random samples of ampoules from the same batch as those used in the breathalyzer tests administered to defendant. The inspections were performed in August and November of 1987. Defendant was stopped and the breathalyzer tests administered on October 31, 1987. The State's analysis of random ampoules from the same batch of *244 ampoules as those used to test defendant was sufficient to satisfy the requirement of "spot checking," as stated in Dickens and DeVito. See also State v. Dohme, 229 N.J. Super. 49, 56 n. 4 (App.Div. 1988) (appeal after remand).

III.
It is firmly established in this State that a defendant is not entitled to a trial by jury when charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. In State v. Linnehan, 197 N.J. Super. 41 (App.Div. 1984), certif. den., 99 N.J. 362 (1985), we held that a defendant charged as a third offender under N.J.S.A. 39:4-50 was not entitled to a jury trial, stating:
Persons charged with crime are constitutionally entitled to trial by jury. Those charged with petty offenses are not. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The New Jersey Supreme Court has held that the only reliable test for distinction is the severity of the authorized punishment, and that jury trial is not required unless the maximum penalty to which the defendant is exposed exceeds six months incarceration and a fine of $1,000. State v. Owens, 54 N.J. 153 (1969); In re Yengo, 84 N.J. 111 (1980). See Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Where factually related petty offenses are tried together whose maximum sentences total more than six months, and the defendant is not offered a jury trial, the sentences may not total more than six months. State v. Owens, supra. Concurrent jail sentences, each of which does not exceed six months, are permissible. Id. 54 N.J. at 163.
The penalty for a drunk driving third offender is a mandatory term of incarceration for 180 days, a fine of $1,000 and loss of license for 10 years. N.J.S.A. 39:4-50. The statutory language, "a term of not less than 180 days," was not well chosen. However, we are satisfied of the legislative intent and we adopt the reasoning of State v. Ferretti, 189 N.J. Super. 578 (Law Div. 1983) in this regard. Defendant was ordered to be jailed for a total of 200 days less 90 days of community service, or a net 110 days. Since his total sentence exposure was to incarceration of not more than six months and a fine of $1,000, and his actual incarceration will be less, there is no constitutional infirmity. [197 N.J. Super. at 43].
See also State v. Owens, 54 N.J. 153 (1969), cert. den., 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970); Blanton v. N. Las Vegas Munic. Ct., 748 P.2d 494 (Nev. 1987), cert. granted, ___ U.S. ___, 108 S.Ct. 2843, 101 L.Ed.2d 880 (1988); Landry v. *245 Hoepfner, 840 F.2d 1201 (5th Cir.1988); State v. Nemesh, 228 N.J. Super. 597, 607 (App.Div. 1988).

IV.
Finally, we are satisfied from our study of the record that, contrary to defendant's claim that "[t]he record below as an entirety does not supply evidentiary support for the Order under appeal," sufficient credible evidence exists in the record to support defendant's conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. State v. Johnson, 42 N.J. 146, 162 (1964).
Accordingly, the judgment under review is affirmed.