240 N.J. Super. 44 (1990)
572 A.2d 640
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EARL B. FORD, TROY V. MARTINO, AND WILLIAM DEREVLANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 1990.
Decided April 5, 1990.
*45 Before Judges KING, SHEBELL and BAIME.
*46 Stephen G. Raymond, Burlington County Prosecutor, attorney for the appellant (Larry E. Holtz, Assistant Prosecutor, of counsel and on the brief).
John S. Sitzler, attorney for the respondents Earl B. Ford and Troy V. Martino.
Mark W. Catanzaro, attorney for the respondent William Derevlany.
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendants Earl B. Ford (Ford), Troy V. Martino (Martino) and William Derevlany (Derevlany) all face separate charges of driving while intoxicated and are scheduled for individual trials in municipal courts in Burlington County.
Ford appeared with counsel in the municipal court and before his trial commenced moved to suppress the results of his breathalyzer test. The basis of his motion was the municipal prosecutor's failure to respond to discovery requests that were allegedly made in accordance with the Law Division's decision in State v. Tull, 234 N.J. Super. 486, 560 A.2d 1331 (Law Div. 1989). The municipal court judge denied Ford's motion because he considered "exclusion of the breathalyzer ... results to be a drastic remedy." The judge decided to postpone the trial in order to allow the municipal prosecutor an additional thirty days to respond to the discovery requests. Defendant then applied to the Law Division for interlocutory review of the judge's decision.
Similarly Derevlany moved before the municipal court to have all his discovery requests complied with or to suppress the results of his breathalyzer test on the grounds that the municipal prosecutor failed to respond to legitimate discovery requests. The municipal judge denied the motion on the basis that the discovery requests were a "fishing expedition." Derevlany filed a motion for interlocutory appeal with the Law Division.
*47 Likewise, Martino made an identical motion to those of Ford and Derevlany in the municipal court to suppress the results of his breathalyzer test. His motion was also denied, and he filed for interlocutory review before the Law Division.
Review was granted by the Law Division of all three interlocutory matters. In a written opinion dated September 27, 1989, the Law Division judge required that the State pay defendants' costs and attorney fees associated with their appearance in municipal court and in connection with the appeal taken to the Law Division. The cases were remanded to the respective municipal courts for payment of costs and fees and for the State to respond to the defendants' discovery demands. Failure to comply was to result in dismissal of the complaint. We granted leave to appeal and consolidated the three matters for purposes of appeal.
Each defendant requested approximately 100 different items or answers as part of 8-page letter requests for discovery. In response to these discovery requests defendants received what was described by defendant Derevlany's attorney as "the standard discovery packet from the New Jersey State Police." This packet consisted of 11 separate items for each defendant, including the drunk-driving reports, narratives of the investigations and certificates of analysis.
At the time of their trials in the municipal court, defendants argued that based on State v. Tull, 234 N.J. Super. 486, 560 A.2d 1331, the prosecutors' response to their discovery requests were deficient. In each case the prosecutors replied that defendants' requests were overbroad and overburdensome.
The State concedes that defendants are entitled under R. 3:13-3 to discovery of all relevant materials in driving while intoxicated (DWI) cases, but urges that defendants' discovery requests were excessive and overburdensome. See State v. Laurick, 231 N.J. Super. 464, 555 A.2d 1133 (App.Div.), certif. granted, 117 N.J. 52, 563 A.2d 819 (1989) (proscribed discovery that was as exhaustive as that permitted by Tull). It argues *48 that the information sought is not relevant and at best may only lead to relevant information. The State maintains that by applying the rules pertinent to discovery in criminal cases "respondents' demand for discovery, ... immediately, and inescapably leads to the conclusion that such a demand comprehends discovery in the `civil sense,' not in the criminal (or quasi-criminal) sense."
It is well-established that discovery of relevant materials is allowed under R. 3:13-3 in drunk driving cases. R. 7:4-2(h); see State v. Utsch, 184 N.J. Super. 575, 579-80, 446 A.2d 1236 (App.Div. 1982). R. 7:4-2(h)[1] provides that discovery in situations involving the possibility of imprisonment or consequence of magnitude is governed by R. 3:13-3 of the criminal practice rules. Thus, a defendant in a drunk driving case is entitled to discovery of all the relevant materials listed in the 11 categories enumerated in R. 3:13-3(a). Utsch, 184 N.J. Super. at 579, 446 A.2d 1236. However, "[u]nlike discovery in civil cases, information cannot be demanded which merely leads to other information which is `relevant.'" State v. Tull, 234 N.J. Super. at 499-500, 560 A.2d 1331; see also State in Interest of W.C., 85 N.J. 218, 221-22, 426 A.2d 50 (1981).
The issue in this case therefore is whether the information sought is relevant material that falls within the scope of R. 3:13-3(a). This same issue was the subject of Tull. In Tull the defendants presented municipal prosecutors with substantially the same discovery letter as presented here. Tull, 234 N.J. Super. at 503-13, 560 A.2d 1331. The judge there concluded that defendants were entitled to a majority of the materials they requested as those materials were relevant. Id. at 500-03, 560 A.2d 1331. The Tull court stated:
"Relevant evidence" is "evidence having any tendency in reason to prove any material fact." Evid.R. 1(2). It is sensible to read the word "relevant" as used in R. 3:13-3 to mean "relevant evidence" as defined in Evid.R. 1(2). Both rules *49 deal with information which may be offered at trial. This reading limits discovery demands in criminal cases to information "having any tendency in reason to prove any material fact." Such demands must be honored only if the information (1) concerns an issue involved in the prosecution, and (2) tends, reasonably, to prove a fact material to such an issue.... However, the fact that information sought may not be admissible at trial as evidence does not bar its discovery. Admissibility cannot always be determined in advance of trial. [Tull, 234 N.J. Super. at 499-500, 560 A.2d 1331].
Although the definition of relevance expressed in Tull is accurate, and consistent with the purpose of discovery in criminal cases, it is nonetheless a broad definition that is impractical in the context of quasi-criminal drunk driving cases. "While our system recognizes a defendant's right to have complete discovery, `allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws.'" Laurick, 231 N.J. Super. at 473, 555 A.2d 1133, quoting State v. R.W., 104 N.J. 14, 28, 514 A.2d 1287 (1986) (Emphasis supplied).
Therefore, the question is how to determine whether there is a "reasonable basis" for a defendant's request for supposedly relevant information. As the court below correctly stated:

R. 3:13-3 permits a defendant "to inspect and copy or photograph any relevant" materials on request. The State argues on appeal that much of the requested discovery was not "relevant." Its position is that only those requests based upon a defendant's actual knowledge of facts supporting defense contentions are relevant. This is incorrect. A defendant, for example, need not know flawed procedures were used in giving a breathalyzer test in order to require the State to disclose information about those procedures. That information is relevant because it "(1) concerns an issue involved in the prosecution, and (2) tends, reasonably, to prove a fact material to such an issue." Tull, 234 N.J. Super. at 499 [560 A.2d 1331]. The State's position would require defendants to discover information favorable to them before R. 3:13-3 discovery could be undertaken. That is not the way our system works.
We hold that defendants' discovery in DWI cases is limited to those relevant items, within the limitations of R. 3:13-3(a), which there is a reasonable basis to believe will assist a defendant's defense. See R.W., 104 N.J. at 28, 514 A.2d 1287; Laurick, 231 N.J. Super. at 473, 555 A.2d 1133; Pressler, Current N.J.Court Rules, comment 1, R. 3:13-3. Further, R. *50 3:13-3(d) permits a court for good cause shown to limit discovery even if otherwise discoverable under R. 3:13-3. Determinations regarding the scope of discovery and questions of relevancy are matters best left to the discretion of trial courts where particular facts give rise to a basis for distinguishing the case from the usual or run of the mill DWI case. The task of determining whether a discovery request is relevant or whether it should be limited, or has been properly responded to, may be largely factual and well-suited to the discretion of a trial court. Cf. State v. Carter, 91 N.J. 86, 112, 449 A.2d 1280 (1982).
Determinations of relevancy in DWI cases depend in large measure on case law surrounding the admissibility of breathalyzer tests. Romano v. Kimmelman, 96 N.J. 66, 474 A.2d 1 (1984), provides guidance for determining what may be relevant information in a drunk driving case. In Romano, the Supreme Court examined questions concerning the admissibility of breathalyzer test results and the reliability of breathalyzer tests made on particular machines. 96 N.J. at 74-75, 474 A.2d
1. The Court held:
that the results of a breathalyzer test shall be generally admissible in evidence when the breathalyzer instrument is in proper working order, is administered by a qualified operator and is used in accordance with accepted procedures, and that such results may, upon the establishment of these conditions, form the basis upon which a conviction of violating N.J.S.A. 39:4-50 may be obtained. [Id. at 82, 474 A.2d 1].
Thus, Romano established three prerequisite elements concerning reliability of test procedures and the operation of the breathalyzer machine that were necessary for the admissibility of test results. Ibid.
In State v. Ernst, 230 N.J. Super. 238, 553 A.2d 356 (App. Div.), certif. den., 117 N.J. 40, 563 A.2d 811 (1989), we again considered the requisites for the admissibility of breathalyzer results, and discussed the necessity of police officer-operator certification. Id. 230 N.J. Super. at 240-43, 553 A.2d 356. Information relating to the prerequisite conditions for establishing the reliability of testing and test results is highly relevant. See Ernst, 230 N.J. Super. at 241-43, 553 A.2d 356; Romano, *51 96 N.J. at 82, 474 A.2d 1. Although the presumption of reliability is irrebuttable once the State establishes certain facts, see State v. Downie, 117 N.J. 450, 569 A.2d 242 (1990), inquiry regarding these facts is extremely material. Thus, information concerning the conditions under which the tests were held, the machine operator's competence, the particular machine's state of repair and identification and documentation of the ampoules used for defendant's tests are all relevant inquiries. See Romano, 96 N.J. at 82, 474 A.2d 1.
While defendants are not permitted to "forage for evidence," a defendant's request for discovery in a DWI case may encompass all relevant material under the categories enumerated under paragraphs (1) through (11) of R. 3:13-3. See R.W., 104 N.J. at 28, 514 A.2d 1287; Tull, 234 N.J. Super. at 498, 560 A.2d 1331; Laurick, 231 N.J. Super. at 473, 555 A.2d 1133. The discovery request of a defendant should be limited to the language of the rule. More particularized or interrogatory forms of discovery demands seeking to enlarge the language of the rule are not to be permitted without leave of court in extraordinary circumstances.
Prosecutors are required to either object to what they perceive to be irrelevant discovery requests, or to respond within 10 days of receipt of a defendant's request for discovery. See Tull, 234 N.J. Super. at 500, 560 A.2d 1331. "[A] defendant's right to discovery is not dependent upon an appraisal of the beneficial value of material sought to be discovered." State v. Polito, 146 N.J. Super. 552, 556, 370 A.2d 478 (App.Div. 1977).
In our view the discovery requests in Tull and the cases presently before this court substantially exceed the scope of R. 3:13-3. The State should not routinely be required to supply defendants with manuals for the operation of the instrument used, as defense counsel seeking such a manual may inspect or copy it through arrangements with the prosecution under the rule, thereby having the manual for general use in the attorney's practice. Requiring routine production of the *52 entire repair record for the breathalyzer instrument or video equipment, or coordinator's certificate or similar documents without appropriate time limitations would be unreasonable. A twelve-month limitation should ordinarily suffice. Requests for records of the municipality's receipt and/or application for drinking/driving enforcement funds appear to lack sufficient relevance. Tull, 234 N.J. Super. at 500, 560 A.2d 1331.
We would expect that under a general demand for discovery in a DWI case under R. 3:13-3 that the State would provide full identification of the instrument used, the date it was first placed in service by the State, the type of instrument used, including the manufacturer, model number and results of the coordinator's testing of the instrument for approximately one year to include the next testing after defendant's tests. Obviously the time of administration of the tests and the results and all reports and relevant documents signed by defendant or pertaining to his condition of sobriety including blood and urine tests must be supplied. We offer these observations only as a general guide to the prosecution and municipal judges. We caution the State that in particular cases a wide variety of materials in its possession could constitute exculpatory information to which a defendant is entitled. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Carter, 91 N.J. 86, 449 A.2d 1280 (1982).
A defendant who believes the State has not supplied relevant materials reasonably required for defense should forthwith give notice to the State and the court prior to the date set for commencement of trial where possible. See Utsch, 184 N.J. Super. at 580, 446 A.2d 1236. In that event a municipal court shall rule in accordance with the guidelines expressed herein and enter an appropriate order. The granting of oral argument on the motion shall be in the court's discretion. R. 3:13-3 otherwise sufficiently provides for protective orders, procedures, time requirements and the like.
*53 We reverse and remand to the municipal court. The State shall submit all required discovery in accordance with R. 3:13-3 forthwith as if a general demand had been made in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] At the time of the Law Division's decision the identical rule was in effect but was codified at R. 7:4-2(g).