9 A.3d 1026 (2010)
417 N.J. Super. 280
STATE of New Jersey, Plaintiff-Respondent,
v.
Joseph N. MARICIC, Defendant-Appellant.
No. A-5247-08T4.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 2010.
Decided August 31, 2010.
*1027 Luke C. Kurzawa argued the cause for appellant (Law Office of Matthew W. Reisig, attorney, Freehold; Mr. Kurzawa, on the brief).
Jordan S. Goldsmith, Assistant Prosecutor, argued the cause for respondent (Edward J. DeFazio, Hudson County Prosecutor, attorney; Mr. Goldsmith, on the brief).
Before Judges CUFF, PAYNE and MINIMAN.
PAYNE, J.A.D.
Defendant, Joseph Maricic, appeals from an order of the Law Division denying his motion for discovery, finding him guilty of driving while intoxicated in violation of N.J.S.A. 39:4-50, suspending his license for a period of eight months, imposing various fines and costs, and staying the sentence pending appeal. On appeal, defendant presents the following arguments:
Point I
THE DECISION OF THE HUDSON COUNTY LAW DIVISION, WHEREIN THE COURT RULED THAT THE DEFENDANT-APPELLANT WAS NOT ENTITLED TO THE HISTORICAL ALCOTEST DATA DOWNLOAD INFORMATION, HAS BEEN RENDERED MOOT BY THE APPELLATE DIVISION'S RULING IN STATE V. REARDON, WHEREIN SUCH DISCOVERY WAS ORDERED TO BE PROVIDED.
Point II
THE LAW DIVISION ERRED IN DENYING THE DEFENDANT'S MOTION FOR ADDITIONAL DISCOVERY SINCE NO RECORD HAD BEEN CREATED BY THE MUNICIPAL COURT FOR THE LAW DIVISION TO RELY UPON IN THE CONTEXT OF TRIAL DE NOVO.
The record reflects that on August 6, 2006 at approximately 10:25 p.m., defendant was arrested for driving while intoxicated, N.J.S.A. 39:4-50, speeding, N.J.S.A. 39:4-98, and making an illegal U-turn, N.J.S.A. 39:4-125. An Alcotest was administered, creating a reading of 0.19 blood alcohol content.
Following the Supreme Court's decision in State v. Chun, 194 N.J. 54, 943 A.2d 114, cert. denied, ___ U.S. ___, 129 S.Ct. 158, 172 L.Ed.2d 41 (2008), defense counsel moved for the following discovery:
1) Downloaded Alcotest results from the subject matter instrument from the date of the last calibration until Defendant's breath tests pursuant to the New Jersey Supreme Court's Order attached *1028 to the Chun Opinion as set forth on page 8,[1] 3.B. of same;
2) the calculation set forth in the foregoing Order on page 3,[2] A.(1)(a) for the purported two breath sample results of Defendant;
3) any repair logs or written documentation relating to repairs of the subject matter Alcotest as set forth in Chun on page 124,[3] footnote 48;
4) to advise Defendant whether, and when, the fuel cell drift algorithm has been implemented since the subject matter Alcotest was last calibrated (see Chun Order on page 7,[4] at subsection 2.F.).
Thereafter, a municipal court judge entered an order denying the first, third and fourth discovery requests and granting the second. No record of any argument on the motion exists, and the judge did not specify the grounds for his decision.
The matter came before a different municipal court judge for trial. At that time, defense counsel stated that he wished to file an interlocutory appeal from the order denying discovery. However, after defense counsel placed on the record his arguments regarding the discovery, and after the State had responded, the judge denied counsel's motion for leave to file an interlocutory appeal, but preserved the issue by permitting defendant to enter a conditional plea of guilty to the charge of driving while intoxicated. A plea was entered, and defendant was sentenced. The charges of speeding and making an illegal U-turn were dismissed.
Defendant appealed to the Law Division. At that time, defense counsel again raised the discovery issue and argued to the Law Division judge that the matter should be remanded in order for a record to be created on that issue. The Law Division judge declined to do so and determined to decide the discovery issue anew. After hearing argument, the judge denied discovery, ruling that none of the requests fell within the "the enunciated fundamental documents required [by Chun] to be produce[d] in discovery by the State" and that defendant had not shown how the discovery was otherwise relevant. The judge therefore enforced the plea agreement and imposed sentence upon defendant.
This appeal, which has been limited to discovery requests one and three,[5] followed.
Discovery in the municipal courts is governed by Rule 7:7-7, which provides in "all cases involving a consequence of magnitude," that "relevant" discovery substantially similar to that enumerated in Rule 3:13-3(b) shall be provided on written notice to the municipal prosecutor. The present matter is considered a case involving a consequence of magnitude to which the discovery rule applies. State v. Utsch, 184 N.J.Super. 575, 579, 446 A.2d 1236 (App.Div.1982); see also State v. Tull, 234 N.J.Super. 486, 493, 560 A.2d 1331 (Law Div.1989).
We have discussed the scope of discovery available to a municipal court defendant in a prosecution for driving while intoxicated as established by breathalyzer results in State v. Ford, 240 N.J.Super. 44, 572 A.2d 640 (App.Div.1990), a case in *1029 which defendants requested approximately 100 items of discovery and received in response approximately eleven separate items including drunk-driving reports, narratives of the investigations and certificates of analysis. Id. at 47, 572 A.2d 640. In analyzing the discovery requests, we noted that "a defendant in a drunk driving case is entitled to discovery of all the relevant materials listed in the 11 categories enumerated in R. 3:13-3(a)."[6]Id. at 48, 572 A.2d 640. However, we noted that "[u]nlike discovery in civil cases, information cannot be demanded which merely leads to other information which is `relevant.'" Ibid. (quoting Tull, supra, 234 N.J.Super. at 499-500, 560 A.2d 1331 and citing State in Interest of W.C., 85 N.J. 218, 221-22, 426 A.2d 50 (1981)). We stated further that: "`While our system recognizes a defendant's right to have complete discovery, "allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws."'" Id. at 49, 572 A.2d 640 (quoting State v. Laurick, 231 N.J.Super. 464, 473, 555 A.2d 1133 (App.Div.1989), rev'd on other grounds, 120 N.J. 1, 575 A.2d 1340, cert. denied, 498 U.S. 967, 111 S.Ct. 429, 112 L.Ed.2d 413 (1990), quoting State v. R.W., 104 N.J. 14, 28, 514 A.2d 1287 (1986)).
Nonetheless, we noted that in Romano v. Kimmelman, 96 N.J. 66, 82, 474 A.2d 1 (1984), the Court had recognized that breathalyzer test results would generally be admissible in evidence when the breathalyzer was shown to be in proper working order, when the breathalyzer test was shown to have been administered by a qualified operator, and it was used in accordance with accepted procedures. Ford, supra, 240 N.J.Super. at 50, 572 A.2d 640. We then stated that:
Although the presumption of reliability is irrebuttable once the State establishes certain facts, see State v. Downie, 117 N.J. 450[, 569 A.2d 242, cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990)], inquiry regarding these facts is extremely material. Thus information concerning the conditions under which the tests were held, the machine operator's competence, the particular machine's state of repair and identification and documentation of the ampoules used for defendant's tests are all relevant inquiries.
[Id. at 51, 572 A.2d 640 (citing Romano, supra, 96 N.J. at 82, 474 A.2d 1).]
Moreover, we rejected the argument that, to obtain discovery, the defendant must know of the existence of flawed procedures or equipment. In doing so, we quoted with approval the following statement by the trial judge:

R. 3:13-3 permits a defendant "to inspect and copy or photograph any relevant" materials on request. The State argues on appeal that much of the requested discovery was not "relevant." Its position is that only those requests based upon a defendant's actual knowledge of facts supporting defense contentions are relevant. This is incorrect. A defendant, for example, need not know flawed procedures were used in giving a breathalyzer test in order to require the State to disclose information about those procedures. That information is relevant because it "(1) concerns an issue involved in the prosecution, and (2) tends, reasonably, to prove a fact material to such an issue." Tull, 234 N.J.Super. at 499 [560 A.2d 1331]. The State's position would require defendants to discover information favorable to them before R. 3:13-3 discovery could be undertaken. *1030 That is not the way our system works.
[Id. at 49, 572 A.2d 640.]
The relevance of repair records was also noted in the context of Alcotest devices in Chun, where the Supreme Court stated:
The record includes scant evidence relating to repair history of any of these devices. Presumably the devices that were part of the evidence in the prosecutions for the named defendants were so newly put into service that no repairs have been needed. At the same time, there is evidence suggesting that from time to time one or more of the devices has been adjusted by a coordinator or returned to Draeger for repair. The record reflects that in either event, a document is generated by the coordinators that evidences those repairs. We commend to the State the establishment of a protocol for maintaining repair logs to the extent that these become more frequent and, therefore, potentially relevant.
[Chun, supra, 194 N.J. at 145, 943 A.2d 114.]
The Supreme Court has held in the context of discovery in a criminal matter: "This Court's policy concerning pretrial discovery has been to encourage the presentation of all relevant material to the jury as an aid in the establishment of truth through the judicial process. The pretrial discovery practice promotes the quest for truth." W.C., supra, 85 N.J. at 221, 426 A.2d 50 (citing State v. Cook, 43 N.J. 560, 563, 206 A.2d 359 (1965)). Given that statement of principle and the acknowledged relevance of the Alcotest repair records, we find that the Law Division judge misused his discretion when he denied discovery of such records pertaining to the Alcotest device used in this matter.
Defendant also requested downloaded Alcotest results from the date of the machine's last calibration. In Chun, the Court noted the significance of this data, stating:
[T]he Special Master recommended, and the parties by and large agree, that the State should create and maintain a centralized database of information regularly uploaded through modem (Special Master's Finding 7), and that defendants should have access to centrally collected and maintained data on their own cases, as well as to the compiled scientific data on matters involving others that has been redacted to shield the personal information related to those other individuals as appropriate (Special Master's Finding 2(h)). Our review of the record satisfies us that there is substantial, credible evidence that supports the Special Master's recommendation concerning the creation and maintenance of a regularly-updated database, as well as his recommendation relating to providing access to that data to defendants.
[Chun, supra, 194 N.J. at 90, 943 A.2d 114 (footnote omitted).]
Further, the Chun Court ordered that the State "forthwith"
[c]reate and maintain a centralized statewide database, comprised of downloaded Alcotest results, and shall make the data, following appropriate redactions of personal identification as needed, available to defendants and counsel....
[Id. at 153, 943 A.2d 114.]
The subject of the database was addressed in a Memorandum dated April 29, 2008 from Gregory A. Paw, Director of the Division of Criminal Justice, to all municipal prosecutors and law enforcement executives. In that memorandum, Paw noted that the Supreme Court had contemplated "a system by which breath tests results *1031 are `regularly uploaded through a modem.'" He stated that such a system did not presently exist. Further, Paw described practical difficulties in downloading the data on a local level and advised municipal prosecutors to resist discovery requests "grounded in the inaccurate premise that data can quickly and easily be retrieved through a centralized system." Paw then suggested a procedure to municipal prosecutors in responding to defense requests for access to historical Alcotest readings. He stated:
Each local police department currently has approximately 3 discs of Alcotest data. The department could open the data stored on each disk, make the appropriate column adjustments, print a hard copy, redact all names, dates of birth and driver's license information, then use this data as a master copy. By arrangement with the municipal prosecutor, the police agency could either give defense counsel the opportunity to view the hard copy record at the agency's location or supply counsel with a separate hard copy (with associated costs of reproduction). Alternatively, the local agency can store the redacted files in an electronic medium on a new compact disc, and provide defense counsel with the opportunity to view, or receive a copy of, the compact disc.
(Footnotes omitted.)
Thus, the Court has acknowledged the discoverability of this data and Paw has developed and promulgated a mechanism for providing it on an interim local basis while a statewide database is established. Moreover, in the present case, defense counsel has acknowledged his responsibility to pay any costs incurred in the production of the data. In these circumstances, we likewise find the denial of discovery in response to defendant's first request to have been mistaken.
In the Findings and Conclusions Submitted to the Supreme Court by the Special Master in Chun, Judge King concluded that "a proper foundation for the admission of an Alcotest 7110 reading" should include "[t]he testimony of the operator that the customary procedures have been meticulously followed and the production of the operator's credentials" and twelve enumerated foundational documents that "must be provided by the municipal prosecutor in discovery" that could be admitted in evidence as business records if kept in the normal course of the State's business. Chun, Report and Recommendation of the Special Master, Feb. 13, 2007, at 239, reprinted at 2007 N.J. LEXIS 39. Those foundational documents were discussed by the Supreme Court in its opinion. Chun, supra, 194 N.J. at 142-45, 943 A.2d 114. There, the Court noted that "[a]lthough, as all parties agree, these documents should continue to be produced in discovery, they are not fundamentally a part of demonstrating that the particular device was in good working order." Id. at 144-45, 943 A.2d 114 (footnotes omitted). The Court held:
The foundational documents that we conclude need to be entered into evidence therefore are few. They are: (1) the most recent calibration report prior to a defendant's test, with part I control tests, part IIlinearity tests, and the credentials of the coordinator who performed the calibration; (2) the most recent new standard solution report prior to a defendant's test; and (3) the certificate of analysis of the 0.10 simulator solution used in a defendant's control tests.
[Id. at 145, 943 A.2d 114.]
We acknowledge that the two items of discovery requested by defendant in this case are not included in either Judge *1032 King's list of fundamental documents or in the more abbreviated list adopted by the Supreme Court. However, we do not regard that fact as acting as a restriction on discovery. As is clear from the Supreme Court's opinion, the foundational documents are required in order to establish the reliability of the Alcotest device utilized in connection with a particular prosecution. As in Ford, discovery of the sort defendant seeks is "extremely material" as a means to test that reliability. Ford, supra, 240 N.J.Super. at 51, 572 A.2d 640. It is accordingly required.
As a result of the foregoing, we remand this matter to the municipal court with directions that the discovery sought by defendant be ordered. Upon its review, defendant may move to vacate his plea, should the evidence warrant that step.
We decline to address defendant's remaining contentions, determining that they do not warrant discussion in a written opinion. R. 2:11-3(e)(2). We merely note that our decision in State v. Reardon, Motion No. M-0085-09 (App.Div. September 14, 2009), is not precedential, and that the order of the municipal judge denying the discovery at issue provided a sufficient basis for the Law Division judge's consideration of the discovery issue in connection with his de novo review of the case.
Reversed and remanded to the municipal court for further proceedings consistent with this opinion.
NOTES
[1] See Chun, supra, 194 N.J. at 153, 943 A.2d 114.
[2] See id. at 150, 943 A.2d 114.
[3] This should be id. at 145, 943 A.2d 114.
[4] See id. at 152, 943 A.2d 114.
[5] At oral argument, defense counsel withdrew his request for discovery concerning the fuel cell drift algorithm.
[6] That enumeration now appears in Rule 3:13-3(b).