NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2041-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

DIONNDRE AMIS,

 Defendant-Appellant.
——————————————————————————————

 Argued January 26, 2017 – Decided June 23, 2017

 Before Judges Hoffman and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Ocean County, Municipal Appeal
 No. 17-15.

 Thomas M. Cannavo, argued the cause for
 appellant (The Hernandez Law Firm, attorneys;
 Mr. Cannavo, of counsel and on the brief).

 John C. Tassini, Assistant Prosecutor, argued
 the cause for respondent (Joseph D. Coronato,
 Ocean County Prosecutor, attorney; Samuel
 Marzarella, Chief Appellate Attorney, of
 counsel; Mr. Tassini, on the brief).

PER CURIAM

 Defendant Dionndre Amis appeals from his de novo conviction

for driving while intoxicated (DWI), N.J.S.A. 39:4-50, and refusal
to submit to a breath test (Refusal), N.J.S.A. 40:4-50.4(a). He

argues the Law Division erred when it rejected his request for

dismissal based upon spoliation of evidence, after the State

destroyed a video of his refusal to submit to a breath test. The

municipal court reviewed the placement of the camera and the breath

test, and it found the video would not have captured defendant's

face during the test. It therefore concluded the video would not

have shown anything "favorable" to defendant's defense, and it

found defendant guilty of DWI and Refusal. Following a trial de

novo on the record, the Law Division found no basis for dismissal

based upon spoliation of evidence and entered the same convictions

and sentence as the municipal court. For the reasons that follow,

we affirm.

 I.

 On June 29, 2014, a Manchester Township police sergeant

observed a speeding vehicle. While in pursuit, the sergeant saw

the vehicle’s brake lights come on several times without an

apparent reason to stop. The sergeant also watched the vehicle

make several unprompted lane changes. Radar detected the vehicle

traveling at double the speed limit. Upon pulling the vehicle

over, the sergeant noticed defendant had droopy eyelids, smelled

of alcohol, and slurred his speech. Defendant also admitted he

consumed two to three beers that evening.

 2 A-2041-15T2
 The sergeant administered three field sobriety tests, which

defendant failed. The sergeant then transported defendant to the

police department for a chemical breath test. The sergeant

instructed defendant on how to provide a proper breath sample. On

his first attempt, defendant blew a sufficient sample of air to

obtain a result; however, on his next two attempts, defendant

failed to provide sufficient air for a valid test. The sergeant

repeated the instructions and told defendant he would charge him

with Refusal if he did not provide a sufficient sample on his next

attempt. After defendant again failed to provide an adequate

sample, the sergeant charged defendant with Refusal.

 On July 1, 2014, defendant’s attorney requested discovery and

preservation of in-station video recordings. The attorney

repeated the request on July 14, 2014, as part of a motion to

compel. The State destroyed the video without providing defendant

a copy. The video system had automatically deleted the video

after its storage system reached its limit, and this video was the

oldest on the system. Defendant consequently filed a motion to

dismiss the charges against him. In its written opinion denying

defendant's motion, the municipal court wrote, "[D]uring the

course of the hearing, we were able to observe the room where the

breath test was administered. In that room is a video camera

located on the opposite side of the [A]lcotest machine. The video

 3 A-2041-15T2
is situated such that the defendant's back would be to the camera."

The court noted, "The only question is whether the video had some

potentially exculpatory depiction of the defendant's good faith

attempt to give a breath sample." It found "due to the proximity

of the camera, the video could not have shown what was happening

from the back. In other words, the breath tube and defendant's

mouth could not possibly be seen on the video footage." It

therefore concluded, "[W]e have a situation where evidence

favorable to the defendant cannot be identified."

 In August 2015, after hearing the trial testimony of the

arresting officer, the municipal court found defendant guilty of

both charges. In December of 2015, the Law Division conducted a

trial de novo and found defendant guilty of both charges. On

appeal, defendant presents the following arguments:

 POINT I

 THE LAW DIVISION ERRED IN DENYING DEFENDANT'S
 SPOLIATION OF EVIDENCE MOTION. THIS COURT
 SHOULD REVERSE THAT DENIAL AND DISMISS THE DWI
 AND/OR REFUSAL CHARGE, OR, IN THE ALTERNATIVE
 EXCLUDE THE OBSERVATIONS OF THE POLICE DUE TO
 THE BAD FAITH AND GROSSLY NEGLIGENT
 DESTRUCTION OF THE POLICE IN-STATION VIDEO IN
 VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS
 OF LAW PURSUANT TO THE FIFTH AND FOURTEENTH
 AMENDMENTS AND ART. 1, PAR. 1 OF THE NEW JERSEY
 CONSTITUTION AND HIS SIXTH AMENDMENT RIGHT OF
 CONFRONTATION.

 A. The police conduct of not preserving the
 in-station video, after specifically
 requested[,] without justification,
 4 A-2041-15T2
 constitutes prima facie or sufficient evidence
 of "bad faith" requiring dismissal of the
 charges or exclusion of observational
 evidence.

 B. Even if "bad faith" or prima facie evidence
 of "bad faith" is not found, this court should
 nevertheless find a due process spoliation of
 evidence violation based on the State
 Constitution and fundamental fairness to
 defendant as expressed in the Arizona v.
 Youngblood1 concurring opinion of Justice
 Stevens and other jurisdictions based on our
 State Constitution.

 POINT II

 EVEN IF THE DUE PROCESS AND RIGHT TO
 CONFRONTATION EVIDENCE SPOLIATION MOTION WAS
 PROPERLY DENIED, THE LAW DIVISION ERRED. THE
 STATE FAILED TO PROVE REFUSAL BEYOND A
 REASONABLE DOUBT AND DEFENDANT SHOULD
 THEREFORE BE ACQUITTED.

 II.

 In reviewing a trial court's decision on a municipal appeal,

we determine whether sufficient credible evidence in the record

supports the Law Division's decision. State v. Johnson, 42 N.J.

146, 162 (1964). Unlike the Law Division, which conducts a trial

de novo on the record, Rule 3:23-8(a)(2), we do not independently

assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999).

In addition, under the two-court rule, only "a very obvious and

exceptional showing of error" will support setting aside the Law

1
 Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed.
2d 281 (1988).
 5 A-2041-15T2
Division and municipal court's "concurrent findings of facts."

Id. at 474. However, when issues on appeal turn on purely legal

determinations, our review is plenary. State v. Adubato, 420 N.J.

Super. 167, 176 (App. Div. 2011), certif. denied, 209 N.J. 430

(2012).

 Due process requires the State to disclose exculpatory

evidence. Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194,

1196-97, 10 L. Ed. 2d 215, 218 (1963); see also State v. Carrero,

428 N.J. Super. 495, 516-18 (App. Div. 2012) (applying Brady to

quasi-criminal motor vehicle violations). A Brady violation

occurs when the prosecution suppresses evidence that is both

material and favorable to the defense. State v. Martini, 160 N.J.

248, 268 (1999). "Evidence is material 'if there is a reasonable

probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different.'" State

v. Robertson, 438 N.J. Super. 47, 67 (App. Div. 2014) (quoting

State v. Knight, 145 N.J. 233, 246 (1996)), modified on other

grounds, 228 N.J. 138 (2017) (stating "[b]ecause defendant has

completed his license suspension, we do not apply the above

standards to his case. The standards govern future requests for

a stay of a license suspension by the municipal court and the Law

Division."). "When the evidence withheld is no longer available,

to establish a due process violation a defendant may show that the

 6 A-2041-15T2
evidence had 'an exculpatory value that was apparent before [it]

was destroyed' and that 'the defendant would be unable to obtain

comparable evidence by other reasonably available means.'" State

v. Mustaro, 411 N.J. Super. 91, 102-03 (App. Div. 2009) (quoting

California v. Trombetta, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534,

81 L. Ed. 2d 413, 422 (1984)) (alteration in original). Suppression

of exculpatory evidence violates due process regardless of whether

the prosecutor acted in bad faith. Knight, supra, 145 N.J. at

245.

 However, a different standard applies to evidence that is

only potentially useful. "Without bad faith on the part of the

State, 'failure to preserve potentially useful evidence does not

constitute a denial of due process of law.'" George v. City of

Newark, 384 N.J. Super. 232, 243 (App. Div. 2006) (quoting

Youngblood, supra, 488 U.S. at 57, 109 S. Ct. at 337, 102 L. Ed.

2d at 289); see also State v. Marshall, 123 N.J. 1, 109 (1991)

(applying Youngblood's bad faith standard); Mustaro, supra, 411

N.J. Super. at 103. When evidence has been destroyed, the court

must focus on "(1) whether there was bad faith or connivance on

the part of the government, (2) whether the evidence . . . was

sufficiently material to the defense, [and] (3) whether [the]

defendant was prejudiced by the loss or destruction of the

evidence." State v. Hollander, 201 N.J. Super. 453, 479 (App.

 7 A-2041-15T2
Div.) (citations omitted), certif. denied, 101 N.J. 335 (1985).

Moreover, the fact that a discovery request was made prior to the

routine destruction of evidence does not compel a finding of bad

faith. See Illinois v. Fisher, 540 U.S. 544, 548, 124 S. Ct.

1200, 1202, 157 L. Ed. 2d 1060, 1066 (2004) ("We have never held

or suggested that the existence of a pending discovery request

eliminates the necessity of showing bad faith on the part of the

police.").

 In addition to the dictates of due process, our discovery

rules impose obligations upon the State to preserve and produce

evidence to a defendant. See R. 3:13-3 (governing criminal

proceedings in Superior Court); R. 7:7-7 (governing municipal

court proceedings). We reviewed the scope of allowable discovery

in Robertson, supra, 438 N.J. Super. at 66-67:

 A DWI defendant's "right to discovery . . .
 is limited to items as to which 'there is a
 reasonable basis to believe will assist a
 defendant's defense.'" [Carrero, supra, 428
 N.J. Super. at 507] (quoting State v. Ford,
 240 N.J. Super. 44, 48 (App. Div. 1990)).

 A defendant is not entitled to information
 that "merely could lead to other information
 that is relevant." Ibid. (citing [State v.]
 Maricic, [] 417 N.J. Super. [280,] 284 [(App.
 Div. 2010)], and Ford, supra, 240 N.J. Super.
 at 48). Discovery "must be relevant in and
 of itself." Carrero, supra, 428 N.J. Super.
 at 508. "However, at least with respect to
 certain classes of information," including
 repair records, "a DWI defendant need not have
 actual knowledge of the facts supporting the
 8 A-2041-15T2
 contentions that underlie his discovery
 requests." Ibid.

 To sustain a conviction for Refusal under N.J.S.A. 39:4-

50.4a, the State must prove, beyond a reasonable doubt,

 (1) the arresting officer had probable cause
 to believe that defendant had been driving or
 was in actual physical control of a motor
 vehicle while under the influence of alcohol
 or drugs; (2) defendant was arrested for
 driving while intoxicated; (3) the officer
 requested defendant to submit to a chemical
 breath test and informed defendant of the
 consequences of refusing to do so; and (4)
 defendant thereafter refused to submit to the
 test.

 [State v. Marquez, 202 N.J. 485, 503 (2010).]

"[A]nything substantially short of an unqualified, unequivocal

assent to an officer's request that the arrested motorist take the

[breath] test constitutes a refusal to do so." State v. Bernhardt,

245 N.J. Super. 210, 219 (App. Div.) (quoting State v. Corrado,

184 N.J. Super. 561, 569 (App.Div.1982)), certif. denied, 126 N.J.

323 (1991). "[A] defendant bears the burden of proof regarding

his or her alleged physical impairment to complete a chemical

breath test." State v. Monaco, 444 N.J. Super. 539, 551 (App.

Div.), certif. denied, __ N.J. __ (2016).

 Defendant first argues, "The police conduct of not preserving

the in-station video, after specifically requested without

justification, constitutes prima facie or sufficient evidence of

'bad faith' requiring dismissal of the charges or exclusion of
 9 A-2041-15T2
observational evidence." He also argues, "Even if 'bad faith' or

prima facie evidence of 'bad faith' is not found, this court should

nevertheless find a due process spoliation of evidence violation

based on the State Constitution and fundamental fairness to

defendant as expressed in the Arizona v. Youngblood concurring

opinion of Justice Stevens and other jurisdictions based on our

State Constitution."

 We reject these arguments because the Law Division properly

deferred to the municipal court's factual findings regarding the

placement of the camera and the video's ability to show anything

relevant to defendant's defense. See Locurto, supra, 157 N.J. at

471. The municipal court observed the room where defendant took

the breath test, and it found the video could not have depicted

anything "favorable" to defendant because he took the test with

his back to the camera. We therefore conclude the video did not

depict anything exculpatory, as required under Brady, supra, 373

U.S. at 87, 83 S. Ct. at 1196-97, 10 L. Ed. 2d at 218, potentially

useful, as required under Youngblood, supra, 488 U.S. at 57, 109

S. Ct. at 337, 102 L. Ed. 2d at 289, or relevant, as required

under Rule 7:7-7(b). The Law Division did not err when it

concluded the State did not violate defendant's rights when it

destroyed the video.

 10 A-2041-15T2
 Defendant next argues, "The Law Division ruling was . . .

erroneous given that it is apparently based on inappropriately

shifting the burden of proof to defendant to proffer an 'alternate

theory' or respiratory illness as to why he could not provide a

sufficient breath sample." We disagree. The Law Division noted

defendant had not "offered any alternative theory as to why he was

unable to provide adequate breath samples," but it said this in

relation to defendant's arguments concerning the video and whether

it could possibly show anything relevant to defendant's defense.

The Law Division also said, "[D]efendant did not indicate he had

any respiratory illness that would affect his ability to give a

proper sample," but it said this in its summary of the police

officer's testimony about why the police officer determined

defendant refused to take the breath test. If the officer had

testified defendant told him that he could not produce a proper

breath sample because he had asthma or some other respiratory

problem, the Law Division would have had to address such testimony.

The Law Division correctly observed the record did not require

such a digression. When defendant failed to produce a valid breath

sample three times, without indicating any respiratory illness or

other physical infirmity to the police officer administering the

test, his conduct was "substantially short of an unqualified,

unequivocal assent to an officer's request," constituting Refusal

 11 A-2041-15T2
under N.J.S.A. 40:4-50.4(a). Bernhardt, supra, 245 N.J. Super.

at 219.

 Affirmed.

 12 A-2041-15T2